OPINION
{¶ 1} This is an accelerated calendar case, submitted to this court on the record and the briefs of the parties. Appellant, Christine M. Jordan, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court entered summary judgment in favor of appellee, Simon Property Group, L.P. ("Simon").
 {¶ 2} At 9:30 a.m. on August 3, 2003, appellant, Christine M. Jordan ("Mrs. Jordan"), was walking with her husband and son through the main concourse of the Great Lakes Mall, which is owned by Simon, to visit a friend in the food court. Prior to reaching the food court, she slipped and fell on a puddle of water, sustaining injuries to her knee.
 {¶ 3} Initially, Mrs. Jordan was unaware of what caused her to fall; however, her husband observed water from an overhead skylight forming a puddle, and a mall-walker also explained the water was coming from a leaky skylight. It was raining on the date of the incident.
 {¶ 4} Mrs. Jordan reported the incident to security, including an account of how and where she had fallen. She declined the security guard's offer to call an ambulance. Mrs. Jordan and her family continued to the food court. Upon leaving the mall, they noticed a cautionary sign had been placed on the floor at the location of the incident.
 {¶ 5} The mall's operations manager, Damian E. Vopat ("Mr. Vopat"), stated in his deposition that since commencing his employment at Great Lakes Mall in 1996, leaking skylights were ongoing problems. Mr. Vopat maintains a "roof leak log" to record the location of leaks as the first step in trying to repair them. Referencing this log, Mr. Vopat did not find a history of reported leaks in the area where Mrs. Jordan fell.
 {¶ 6} No standard procedures existed for inspecting the safety of the mall premises prior to opening. When mall employees encounter a leak or spill, they are instructed to immediately place something in the area, call security, and wait for a maintenance person to clean up the area. Incidents were typically recorded on a sheet attached to a clipboard, which was kept with the janitorial cart.
 {¶ 7} Mrs. Jordan filed a complaint against Simon with her husband, Rex Jordan, who alleged loss of consortium. On appeal, Mrs. Jordan is the only party challenging the trial court's ruling.
 {¶ 8} The trial court granted Simon's motion for summary judgment due to lack of evidence as to whether Simon created the puddle, created the leak that was the source of the puddle, knew the puddle existed, or knew how long the puddle had been on the concourse. The trial court held that no genuine issue of material fact existed as to whether Simon had actual or constructive notice of the puddle.
 {¶ 9} Mrs. Jordan raises the following assignment of error:
 {¶ 10} "The trial court erred to the prejudice of appellant when it granted appellee's motion for summary judgment and ruled that appellee did not create a hazardous condition."
 {¶ 11} According to Civ.R. 56(C), in order to grant a motion for summary judgment, the moving party must prove that there is no genuine issue of material fact, that the moving party is entitled to judgment as a matter of law, and based on the evidence presented, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party.[1] Appellate review of whether the trial court properly granted summary judgment involves questions of law and is reviewed using the de novo standard.[2]
 {¶ 12} The Supreme Court of Ohio stated in Dresher v. Burt that in a summary judgment exercise the moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. If the moving party fails to satisfy this burden, then the motion for summary judgment is denied. If the moving party does satisfy this burden, then the burden shifts to the nonmoving party, who must set forth specific facts that demonstrate there is a genuine issue for trial.[3]
 {¶ 13} In its motion for summary judgment, Simon, citing the record, claimed no mall employees were aware of the puddle until Mrs. Jordan reported the incident; therefore, there is no evidence of Simon having actual notice. Simon further alleged that since Mrs. Jordan had no knowledge of how long the puddle had been on the floor there was no evidence of constructive notice. Additionally, Simon presented Mr. Vopat's deposition as evidence of a lack of constructive notice since he was unaware of any prior leaks occurring in the specific area where the incident took place.
 {¶ 14} When the burden of proof shifted to the nonmoving party, Mrs. Jordan presented evidence from Mr. Vopat's deposition alleging that a faulty leak reporting system, a lack of standard procedures for cleaning up puddles, and inefficient leak repairs all contributed to the creation of the hazardous condition. The trial court found no genuine issue of material fact existed as to whether Simon had actual or constructive notice of the existence of the puddle and, as a matter of law, granted Simon's motion for summary judgment. We believe Mrs. Jordan's evidence of Simon's knowledge that some of the skylights had leaked in the past was sufficient to meet her reciprocal burden pursuant to Dresher v. Burt.
Therefore, for the following reasons, we reverse the judgment of the trial court.
 {¶ 15} In order to prove a claim of negligence, a "plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom."[4] When a business invitee is involved, a shopkeeper owes business invitees a duty of ordinary care in maintaining reasonably safe premises so its customers are not unnecessarily and unreasonably exposed to danger.[5] However, "a shopkeeper is under no duty to protect business invitees from dangers `which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.'"[6]
 {¶ 16} Mrs. Jordan was a business invitee when she slipped in the Great Lakes Mall, because she came "`upon the land at the express or implied invitation of the possessor, for the purpose of transacting some business within the scope of the invitation.'"[7] As owner of the property, Simon owed Mrs. Jordan the duty of ordinary care to maintain reasonably safe premises, but was under no duty to protect her from open and obvious dangers.
 {¶ 17} The trial court found there was "no evidence as to how large the puddle was, what color the floor was, what type of floor it was, or whether a puddle of water would be visible on the surface of the floor." Consequently, the trial court held that whether the puddle was "open and obvious" was a genuine issue of material fact. If the puddle was open and obvious, Mrs. Jordan, as a business invitee, would be expected to protect herself against the danger, and she would be barred from recovering against Simon.[8] However, the open and obvious doctrine issues are not before us on appeal, and we will focus our analysis on whether there is a genuine issue of material fact concerning the duty owed to Mrs. Jordan.
 {¶ 18} In order for a plaintiff to prevail in a slip and fall case in Ohio, the plaintiff must demonstrate at least one of the following:
 {¶ 19} "[1] That the defendant through its officers or employees was responsible for the hazard complained of; or [2] that at least one of the such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or [3] that such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care."[9]
 {¶ 20} There is no evidence in the record as to whether any mall employee knew about the existence of the specific puddle Mrs. Jordan slipped on prior to her fall. However, we believe the issues of constructive notice and whether Simon failed to exercise a duty of ordinary care, because the danger existed for a sufficient length of time, are genuine issues of material fact.
 {¶ 21} The trial court's entry of summary judgment was based on distinguishing Lopez v. Cleveland Municipal School District and Tyrrellv. Investment Associates from the case at bar.[10] Both of these cases involved hazardous conditions created by recurring leaks. The trial court distinguished these cases by stating each leak occurred in the same location, causing the hazard to form in a very specific location each time. We believe the trial court read these cases too narrowly and they do in fact apply to the present case.
 {¶ 22} In Lopez, the plaintiff alleged that her son slipped and fell in a puddle at school created by a recurring leak. Summary judgment was entered for the school on the basis that the mother had failed to produce evidence showing the school had actual or constructive notice of the dangerous condition or had created the hazard. On appeal, the court found there were genuine issues of material fact based on the son's testimony that he had seen "water dripping to the floor four to five months prior" and that water dripped to the floor whenever it rained or snowed.[11]
The court reasoned that even though the puddle did not exist all the time, the school should have been aware that the recurring leak caused the puddle. Therefore, the court found that the plaintiff had presented sufficient evidence to withstand a motion of summary judgment.[12]
 {¶ 23} In Mr. Vopat's deposition, he stated leaking skylights had been an ongoing problem at the mall since at least 1996. Applying the reasoning of Lopez, although this particular puddle did not exist all the time, Simon's knowledge of its leaking skylight problem, especially during rain, should have made it aware that puddles were likely to form underneath skylights regardless of which particular skylight was leaking at the time.
 {¶ 24} In Tyrrell, the plaintiffs appealed a directed verdict for the defendant-drug store, whose canopy caused water to drip onto the sidewalk producing a hazardous ice patch during freezing weather. The appellate court found that there was no evidence the store employees knew about the specific ice patch that caused the plaintiff's fall; however, they did know that the canopy periodically dripped causing the ice patch to form.[13] The court reasoned that the drug store's knowledge about the faulty canopy and the weather conditions that created the problem was sufficient to put the drug store in a better position to prevent the hazard than its business invitees. The court reversed the directed verdict for the drug store on the basis that "[a] jury could reasonably find that the drug store failed to exercise reasonable care for its customers' safety."[14]
 {¶ 25} In the present case, there is no evidence that any mall employee knew about the specific puddle that caused Mrs. Jordan to fall, but there is evidence from Mr. Vopat's deposition that Simon had knowledge of faulty, leaky skylights causing puddles during wet weather. Applying the reasoning of Tyrrell, Simon was in a better position to prevent the hazard than its business invitees, and a jury could find that Simon failed to exercise reasonable care for its customers' safety.
 {¶ 26} As set forth long ago in Palsgraf, "[t]he risk reasonably to be perceived defines the duty to be obeyed."[15] Knowing numerous skylights have leaked in the past, creates a reasonable risk that any one of the skylights could leak in the future, thereby creating a hazard on the floor.
 {¶ 27} Construing the evidence of this case in a manner that is most favorable to Mrs. Jordan, reasonable minds could reach different conclusions as to whether Simon had constructive notice of the hazardous condition. As there remain genuine issues of material fact, the trial court erred by entering summary judgment in favor of Simon. Mrs. Jordan's assignment of error has merit.
 {¶ 28} This judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
O'Toole, J., concurs.
Grendell, J., dissents with Dissenting Opinion.
[1] Civ.R. 56(C).
[2] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[4] (Citation omitted.) Armstrong v. Best Buy Co., 99 Ohio St. 3d 79,2003-Ohio-2573, at ¶ 8.
[5] Paschal v. Rite Aid Pharmacy Inc. (1985), 18 Ohio St.3d 203.
[6] Id. at 203-204, quoting Sidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph one of the syllabus.
[7] Scheibel v. Lipton (1951), 156 Ohio St. 308, 314, quoting Harper on Torts, Section 96, et seq.
[8] Paschal v. Rite Aid Pharmacy Inc., supra.
[9] Johnson v. Wagner Provision Co. (1943), 141 Ohio St. 584, 589.
[10] Lopez v. Cleveland Mun. School Dist., 8th Dist. No. 82438, 2003-Ohio-4665; Tyrrell v. Investment Assoc., Inc. (1984),16 Ohio App.3d 47.
[11] Lopez v. Cleveland Mun. School Dist., at ¶ 10-11.
[12] Id.
[13] Tyrrell v. Investment Assoc., Inc., 16 Ohio App.3d at 49.
[14] Id.
[15] Palsgraf v. Long Island RR. Co. (1928), 248 N.Y. 339, 344.