[Cite as *Byrd v. Arbors E. & Subacute Rehab. Ctr.*, 2014-Ohio-3935.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Betty Byrd, :

        Plaintiff-Appellant, :

                                   No. 14AP-232

v. : (C.P.C. No. 11CVC-2-2561)

Arbors East Subacute & Rehabilitation : (ACCELERATED CALENDAR)
Center,

                      :

        Defendant-Appellee.

                      :

D E C I S I O N

Rendered on September 11, 2014

*Schiff & Assoc. Co., L.P.A.*, and *Terry V. Hummel*, for appellant.

*Rendigs, Fry, Kiely & Dennis, LLP*, and *Paul W. McCartney*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Plaintiff-appellant, Betty Byrd, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Arbors East Subacute & Rehabilitation Center, in appellant's slip-and-fall personal injury action. For the following reasons, we affirm.

I. BACKGROUND

{¶ 2} On August 27, 2009, appellant went to appellee's facility to visit her sister, Louise Ahmad, a patient at the facility. As appellant entered Mrs. Ahmad's room, she

slipped and fell on a slippery substance on the floor.  As a result of the fall, appellant suffered serious injuries, including a fractured hip.

{¶ 3}   Appellant filed a complaint against appellee on February 25, 2011, claiming that appellee negligently or otherwise unlawfully failed to warn her of the slippery condition of the floor, caused or permitted the floor to be slippery, failed to inspect the floor where she slipped and fell, and caused or permitted her slip-and-fall accident. Appellant claimed that her injuries were a proximate result of appellee's unlawful actions. Appellee filed a motion for summary judgment, to which appellant filed a response.  In a decision filed February 24, 2014, the trial court granted appellee's motion for summary judgment.  On February 27, 2014, the trial court issued a judgment entry memorializing its decision.

## II.  ASSIGNMENT OF ERROR

{¶ 4}   In a timely appeal, appellant asserts the following single assignment of error:

> The trial court erred in sustaining Defendant's Motion for
> Summary Judgment.

## III.  STANDARD OF REVIEW

{¶ 5}   Appellate review of summary judgments is de novo.  *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).  When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination.  *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown* at 711.  We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it.  *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 6}   Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Accordingly, summary judgment is appropriate

only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 7} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

## IV. DISCUSSION

{¶ 8} To establish actionable negligence, the plaintiff must prove: (1) the defendant owed a duty of reasonable care toward the plaintiff, (2) the defendant breached its duty of reasonable care, and (3) the plaintiff suffered injuries proximately caused by the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998). The relationship between the parties determines the duty defendant owes to the plaintiff. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996).

{¶ 9} In this case, the parties agree that appellant was a business invitee of appellee at the time she sustained her injuries. Business owners such as appellee owe invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its invitees are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985), citing *Campbell v. Hughes Provision Co.*, 153 Ohio St. 9 (1950). However, a business owner is not an insurer of an invitee's safety or against all types of accidents that may occur on its premises. *Id.*; *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943). No presumption or inference of negligence arises from the mere occurrence of an accident or from the mere fact that an

injury occurred. *Barker v. Wal-Mart Stores, Inc.*, 10th Dist. No. 01AP-658 (Dec. 31, 2001), citing *Dickerson v. Food World*, 10th Dist. No. 98AP-287 (Dec. 17, 1998). "Rather, 'there must be direct proof of a fact from which the inference can reasonably be drawn.' " *Balcar v. Wal-Mart*, 10th Dist. No. 12AP-344, 2012-Ohio-6027, ¶ 10, quoting *Parras v. Std. Oil Co.*, 160 Ohio St. 315, 319 (1953).

{¶ 10} This court has drawn a distinction between hazardous conditions created by business owners and those created by a third party. *Francill v. Andersons, Inc.*, 10th Dist. No. 00AP-835 (Feb. 15, 2001), citing *Guilford v. Cent. Hardware Co.*, 62 Ohio App.3d 58 (10th Dist.1989). When the business owner creates the hazardous condition which causes the plaintiff's injury, the plaintiff need not demonstrate that the business owner had actual knowledge or constructive notice of the hazardous condition. *Crane v. Lakewood Hosp.*, 103 Ohio App.3d 129, 136 (8th Dist.1995). "This sensible rule follows because one who has created the condition is presumed to know what it created." *Id.*

{¶ 11} However, when a third party creates a hazardous condition, the plaintiff must demonstrate that the business owner had, or in the exercise of reasonable care should have had, notice of the hazardous condition. *Francill.* Specifically, the plaintiff must demonstrate that the business owner had actual knowledge of the hazardous condition and failed to remove it or warn against it or that the hazardous condition existed for a sufficient time that the failure to remove it or warn against it constituted a breach of ordinary care. *Id.*, citing *Johnson v. The Wagner Provision Co.*, 141 Ohio St. 584 (1943); *Mercer v. Wal-Mart Stores, Inc.*, 10th Dist. No. 13AP-447, 2013-Ohio-5607, ¶ 14, citing *Titenok v. Wal-Mart Stores E., Inc.*, 10th Dist. No. 12AP-799, 2013-Ohio-2745, ¶ 6; *Barker*, citing *Vernardakis v. Thriftway, Inc.*, 1st Dist. No. C-960713 (May 7, 1997). If no evidence of actual notice is provided, the plaintiff must provide evidence as to the length of time the hazard existed to support an inference that the business owner had constructive knowledge. *Francill*, citing *Presley v. Norwood*, 36 Ohio St.2d 29, 32 (1973). "Thus, evidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care." *Harrison v. Andersons, Inc.*, 6th Dist. No. L-99-1368 (June 23, 2000), citing *Combs v. First Natl. Supermarkets, Inc.*, 105 Ohio App.3d 27, 30 (8th Dist.1995).

{¶ 12} The evidence submitted in support of, and in opposition to, appellee's motion for summary judgment consists of the deposition testimony of Louise Ahmad, Kpadehyeah Washington, Jane Runkel, R.N., Darlene Williams, and David Baker.[1] This evidence establishes the following.

{¶ 13} Mrs. Ahmad testified that she shared a room with Mrs. Davis and that Mrs. Davis's bed was nearest the entrance to the room. According to Mrs. Ahmad, Mrs. Davis involuntarily "shook all the time" and that it was "no secret" that Mrs. Davis had Parkinson's disease. (Nov. 1, 2012 Depo., 13.) Despite her condition, Mrs. Davis often tried to feed herself. As a result, Mrs. Davis often spilled food and/or beverages onto the floor. Mrs. Ahmad averred that if appellee's staff members knew about a spill on the floor, they would clean it up.

{¶ 14} On August 27, 2009, Mrs. Ahmad was seated in her bed and observed appellant enter her room. When appellant attempted to maneuver around Mrs. Davis's wheelchair, which was positioned just inside the doorway to the room, she slipped and fell. Because Mrs. Ahmad could not see the floor near Mrs. Davis's wheelchair, Mrs. Ahmad did not know what caused appellant to fall. She could not remember if Mrs. Davis was eating when appellant entered the room. She also averred that if Mrs. Davis had been eating and spilled a substance on the floor, she did not know how long it had been there prior to appellant's fall.

{¶ 15} Kpadehyeah Washington, a nurse's aide employed by appellee, testified that he was walking down the hallway at approximately 9:10 p.m. on August 27, 2009 and heard a loud noise coming from the room shared by Mrs. Ahmad and Mrs. Davis. He entered the room and discovered appellant on the floor. He noticed some cream-colored ice cream on the floor just inside the doorway. Mr. Washington did not see appellant fall, and appellant did not tell him that she had slipped and fallen on the ice cream. However, Mr. Washington surmised that appellant had done so because the ice cream was smeared

---

[1] In both the summary judgment materials filed in the trial court and the briefs filed in this court, the parties cite extensively to appellant's deposition testimony. The trial court found that appellant's testimony was not properly before the court for consideration, as neither party filed a transcript of the deposition. Because an appellate court reviewing an award of summary judgment may consider only that evidence which was part of the proceedings before the trial court, this court may not consider appellant's deposition testimony. *See Hayes v. Columbus*, 10th Dist. No. 13AP-695, 2014-Ohio-2076, ¶ 40, citing *Wallace v. Mantych Metalworking*, 189 Ohio App.3d 25, 2010-Ohio-3765, ¶ 10-11 (2d Dist.).

on the floor.  Although Mr. Washington averred that he did not know exactly how the ice cream got on the floor, he noted that, when he walked into the room, Mrs. Davis was sitting in a wheelchair near the doorway eating ice cream from a food tray and that the ice cream had begun to melt and was dripping onto the floor.  Mr. Washington helped appellant from the floor and into a wheelchair; he then summoned the nursing supervisor, Jane Runkel, to the room.

{¶ 16} Mr. Washington further testified that he had no idea how Mrs. Davis got the ice cream, how long she had been eating it, or how long the ice cream spill was on the floor prior to appellant's fall.  He also averred that the incident could have happened in a "split second."  (Aug. 23, 2012 Depo., 32.)

{¶ 17} According to Mr. Washington, patients in the facility were permitted to eat meals in their rooms.  The dinner hour generally lasted between 5:30 and 7:00 p.m., following which staff members would pick up the food trays on which appellee served the meals and provide any clean-up services required.  Patients also had access to food at times other than scheduled meal times, through either snacks provided by appellee or through family members bringing outside food to the residents.  Mr. Washington averred that appellee sometimes provided ice cream as an evening snack for the residents, typically one to two hours after dinnertime.  He further averred, however, that the ice cream container from which Mrs. Davis was eating on the night of the incident was not the type of ice cream container typically provided by appellee; rather, it was the type of container purchased in a retail store.

{¶ 18} Ms. Runkel testified that when she entered the room, she observed a clear liquid substance on the floor; at the time, she did not know the source of the substance or how it got onto the floor.  She stated that she had no way of knowing how long the substance had been on the floor prior to appellant's fall.  Pursuant to appellee's protocol, she assessed appellant's medical condition, prepared an incident report, notified the on-call manager, and arranged for emergency medical personnel to transport appellant to the hospital.  Ms. Runkel's incident report indicated that appellant fell after sliding on a clear material spilled by Mrs. Davis.

{¶ 19} Ms. Runkel averred that, prior to the incident, no one from Mrs. Ahmad's family had complained to her about Mrs. Davis spilling food or otherwise causing debris

to be on the floor.  She further testified that on occasion, state inspections revealed general family complaints regarding problems with uncleanliness of patient rooms.

{¶ 20} Darlene Williams, Mrs. Ahmad's daughter, testified that she visited her mother every morning for four to five hours while her mother was a patient in appellee's facility; consequently, she had the opportunity to observe Mrs. Davis.  According to Ms. Williams, Mrs. Davis "shaked a lot" and had difficulty using utensils to feed herself. (Nov. 1, 2012 Depo., 15.)  As a result, Mrs. Davis often spilled food onto the floor.  In addition to the meals provided by appellee, Mrs. Davis often ate snacks provided by a visiting friend.  Ms. Williams observed spilled food on the floor almost daily and, at times, had to walk around spilled food on her way to Mrs. Ahmad's bed.  Ms. Williams cleaned spilled food off the floor "a couple times" and, on one or two occasions, mentioned to staff members that there was spilled food and ice on the floor.  (Nov. 1, 2010 Depo., 20.) According to Ms. Williams, staff members cleaned up reported spills in "no more than about five minutes" after being notified of the problem.  (Nov. 1, 2012 Depo., 23.)

{¶ 21} Ms. Williams admitted that she was not present when appellant slipped and fell on August 27, 2009.  When she heard about the incident, she assumed it was related to spilled food or ice being on the floor.

{¶ 22} David Baker, Mrs. Ahmad's son, testified that he visited his mother for approximately two hours every evening while she was a patient in appellee's facility. According to Mr. Baker, Mrs. Davis often ate while seated in a wheelchair; the wheelchair typically was stationed near the entrance to the room.  The food Mrs. Davis ate was generally provided by appellee; however, some of it was provided by outside visitors. According to Mr. Baker, Mrs. Davis exhibited "[s]haking and movement," which caused her difficulty in controlling or stabilizing food she held in her hands.  (Nov. 2, 2012 Depo., 12.)

{¶ 23} Mr. Baker testified that he often observed food spills on the floor primarily caused by Mrs. Davis.  Mr. Baker frequently advised the staff of the need to clean the spills in order to protect those entering the room from slipping and falling.  According to Mr. Baker, at one point, a staff member responded that the staff "couldn't keep coming back to clean up the floor because [Mrs. Davis is] constantly dropping items."  (Nov. 2, 2012 Depo., 15.)  Mr. Baker averred that when he reported a food spill to the staff, it was

cleaned up "in a range of about five minutes." (Nov. 2, 2012 Depo., 17.) However, if the staff cleaned a spill and Mrs. Davis spilled something else soon afterward, the time it took to clean the second spill depended upon how busy the staff was with other patients. Mr. Baker acknowledged that "there was never a time when [the staff] just refused to clean [a second spill] if [he] notified them * * *, it just took them more time to get there." (Nov. 2, 2012 Depo., 39.)

{¶ 24} Mr. Baker conceded that he was not present when appellant slipped and fell on August 27, 2009. He arrived at the facility less than an hour after the incident; staff members reported that appellant had slipped and fallen on a liquid substance on the floor. He was not told what the substance was, how it came to be on the floor or how long it had been on the floor prior to appellant's fall. According to Mr. Baker, the food substance "obvious[ly] came from Ms. Davis, because there would always be food items on her blanket or on her tray." (Nov. 2, 2012 Depo., 42.) Mr. Baker opined that "this was an accident waiting to happen * * * based on the fact of their constant failure and refusal a lot of times to clean up those areas." (Nov. 2, 2012 Depo., 24-25.)

{¶ 25} Upon this evidence, the trial court found that appellant "cannot prove that [appellee] had constructive notice of the ice cream puddle [because] [t]here is no evidence to suggest how long the ice cream was on the floor prior to [appellant] slipping and falling in it. Therefore, there is no evidence from which an inference can be made that failure to warn of or remove the puddle constituted a breach of ordinary care." (Feb. 24, 2014 Decision, 8). In so holding, the trial court rejected appellant's contention that the totality of the historical circumstances regarding Mrs. Davis's food/beverage spills constituted constructive notice that there would be spilled food or beverages on the floor at the time of appellant's fall. The court specifically found unpersuasive appellant's reliance on a line of cases holding that a defendant's knowledge of a history of hazardous conditions constitutes constructive notice of the existence of a hazardous condition at the time of an injury. Accordingly, the court found that, "[w]ithout evidence of constructive notice, [appellant] cannot establish that [appellee] breached the duty of ordinary care owed to her as a business invitee." (Feb. 24, 2014 Decision, 8.) The trial court found that appellee was entitled to judgment as a matter of law and granted appellee's motion for summary judgment.

{¶ 26} On appeal, appellant does not claim that appellee had actual knowledge of the presence of the ice cream on the floor or that she presented sufficient evidence establishing that the ice cream had been on the floor long enough prior to appellant's fall to support an inference that appellee had constructive knowledge of the presence of the ice cream. Rather, appellant maintains that case law establishes that "constructive notice does not require knowledge of the specific puddle, but knowledge of a history of issues creating puddles in that room is sufficient." (Appellant's Brief, 13.) Appellant also argues that "[t]he evidence presented in this case raises various issues of genuine fact from which a jury could conclude that [appellee's] conduct created the hazardous condition which caused [appellant's] injuries." (Appellant's Brief, 19.)

{¶ 27} In support of her historical knowledge argument, appellant points to the testimony of Ms. Williams and Mr. Baker that they more than once notified appellee's staff members of Mrs. Davis's tendency to spill food and/or beverages onto the floor and cites this court's decision in *Szerszen v. Summit Chase Condominiums*, 10th Dist. No. 09AP-1183, 2010-Ohio-4518, and the two cases upon which *Szerszen* relied—*Lopez v. Cleveland Mun. School Dist.*, 8th Dist. No. 82438, 2003-Ohio-4665, and *Jordan v. Simon Property Group, L.P.*, 11th Dist. No. 2004-L-060, 2005-Ohio-4480.

{¶ 28} In *Szerszen*, the plaintiff sustained injuries after slipping and falling on a puddle of water that had accumulated on his condominium floor. The puddle of water came from his sink, which had overflowed due to a sludge blockage in the stack line. It was undisputed that maintenance of the stack line was the responsibility of the defendants. The defendants responded to plaintiff's negligence action with a motion for summary judgment, arguing that they had no constructive knowledge of the water puddle on the plaintiff's floor. The trial court granted the defendants' motion, finding that they did not breach any duty owed to the plaintiff because they neither caused nor had actual or constructive knowledge of the water puddle.

{¶ 29} On appeal, the plaintiff argued that the defendants did not need to have knowledge of the specific water puddle but, instead, needed only to have knowledge of the history and extent of plumbing problems which ultimately resulted in the water puddle. The plaintiff contended that notice was immaterial to determining breach of duty because the defendants created the hazard in question.

{¶ 30} This court found the defendants' maintenance of the stack lines and knowledge of past plumbing problems relevant to determining whether the defendants created the hazardous condition that caused the plaintiff's injury, stating:

> The particular mechanism by which the hazard was created is immaterial for this analysis. The relevant issue is whether the defendants' actions or inactions brought about a hazardous condition, regardless of the means by which it did so. Here, if [the defendants] caused the hazardous condition-that is, caused water to be spilled onto [the plaintiff's] floor-by failing to maintain the stack lines, then [the defendants] breached their duty to [the plaintiff] by creating the hazardous condition.

*Id.* at ¶ 22.

{¶ 31} Following this statement, this court noted testimony from the defendants' building engineer establishing that the cause of the water backup into the plaintiff's condominium was a clogged stack line, which was the responsibility of defendants. The engineer provided testimony regarding the history of plumbing problems involving the stack lines. Based upon this testimony, this court found that "it is apparent that [the defendants] were aware the stack lines tended to clog, causing plumbing problems within the units. A reasonable fact finder could find a foreseeable consequence of clogged stacked lines is sewage water backing up into residents' condominiums." *Id.* at ¶ 23. We found that "[w]hether [the defendants'] lack of proper maintenance lead directly to the creation of a dangerous condition in [the plaintiff's] condominium is for a fact finder to resolve. Therefore, it appears from the evidence that reasonable minds could come to more than one conclusion as to whether [the defendants] created the hazard causing [the plaintiff's] injuries, and viewing such evidence most strongly in favor of [the plaintiff], [the plaintiff] has demonstrated genuine issues of material fact remain to be litigated." *Id.*

{¶ 32} Following the analysis as to whether the defendants created the hazard, this court next discussed actual and constructive notice. We first noted that there was no dispute that the defendants had no actual notice of the water puddle on the plaintiff's kitchen floor. We then noted the plaintiff's reliance on *Lopez* and *Jordan* for the proposition that the defendants had constructive notice of the water puddle because they

knew there was a history of problems with the common plumbing system and failed to remedy the problems.

{¶ 33} In *Lopez,* a boy slipped and fell in a puddle at school created by a recurring leak. The trial court granted summary judgment to the school, finding that the plaintiff had failed to produce evidence demonstrating that the school created the hazard or had actual or constructive notice of the dangerous condition. On appeal, the court determined there were genuine issues of material fact based upon the boy's testimony that he had observed water dripping onto the floor four to five months prior to the incident, evidence that water dripped onto the floor after it rained or when the snow melted, and the mother's testimony that she had observed maintenance workers place buckets in the area prior to the boy's fall. The *Lopez* court reasoned that, even though the puddle probably did not exist all the time, the school should have been aware that the recurring leak caused the puddle to accumulate during wet weather conditions; accordingly, the court found there was sufficient evidence demonstrating a genuine issue of material fact as to whether the school had actual or constructive notice of the dangerous condition such that summary judgment should have been denied.

{¶ 34} In *Jordan*, the plaintiff slipped and fell on a puddle of water caused by rain leaking from a skylight. Deposition testimony submitted in the case established that leaking skylights were an ongoing problem for several years prior to the plaintiff's fall; however, there were no recorded leaks in the area in question. The trial court granted the defendant's motion for summary judgment based on the absence of evidence as to whether the defendant created the puddle, created the leak that was the source of the puddle, knew the puddle existed or knew how long the puddle had been the floor.

{¶ 35} On appeal, the court found there remained a genuine issue of material fact on the issue of constructive notice. Relying upon the deposition testimony that the leaking skylights had been an ongoing problem and applying the reasoning of *Lopez*, the court found that, although the particular puddle did not exist all the time, the defendant's knowledge of its leaking skylight problem, especially when it rained, should have made it aware that puddles were likely to form underneath skylights regardless of which particular skylight was leaking at the time. The court further explained that, although there was no evidence that any of the defendant's employees knew about the specific

puddle that caused the fall, there was evidence that the defendant had knowledge that the faulty, leaky skylights caused puddles during wet weather and that knowledge of past skylight leakage created a reasonable risk that any of the skylights could leak in the future, thereby creating a hazard on the floor.  Accordingly, the court found that the defendant was in a better position to prevent the hazard than its invitees, and a jury could find that the defendant failed to exercise reasonable care.

{¶ 36} We found the circumstances in *Szerszen* analogous to those in *Lopez* and *Jordan.*  In particular, we noted that there existed a known history of problems with the stack lines and a known history that the clogged stack lines would sometimes cause water to back up into the sinks of individual condominium owners.  We found that, as in *Lopez*, even though the water did not exist on the plaintiff's floor all the time, the defendants should have been aware that the repeated problems with the stack lines would cause back ups and possible puddles.  We also found that, as in *Jordan*, the defendants' knowledge of its clogged stack line problem should have made it aware that back up into residents' dwellings was likely to result, regardless of which particular resident's dwelling the sewage would back up into at any time.  We further found that, as in *Jordan*, although there was no evidence that the defendants knew about the specific puddle that caused the fall, there was evidence that the defendants had knowledge of faulty stack lines causing back ups when they were clogged and knowledge that residents had experienced back ups in the past created a reasonable risk that any one of the residential units could experience a back up in the future, thereby creating a hazard on the floor.  Finally, as in *Jordan*, we found that the defendant was in a better position to prevent the hazard than was the plaintiff and other residents and that a jury could find that the defendant failed to exercise reasonable care.

{¶ 37} As did the trial court, we find the cases upon which appellee relies inapposite to the circumstances in the present case.  Appellant's argument to the contrary, we find that appellee's historical knowledge of Mrs. Davis's tendency to spill food and/or beverages onto the floor while consuming them is not analogous to the defendants' historical knowledge of clogged stack lines, recurring leaks, and faulty skylights in *Szerszen*, *Lopez*, and *Jordan*, respectively.  The hazards in those cases resulted from physical defects in the business owners' properties which were within the full and

exclusive control of those business owners. In contrast, the hazard in the present case did not result from a physical defect in appellee's property; rather, it resulted from Mrs. Davis, a person over whom appellee did not have full and exclusive control. No evidence establishes that Mrs. Davis's eating habits were controlled by appellee, that appellee was always aware of Mrs. Davis's food and/or beverage consumption or, most importantly, that appellee was aware that Mrs. Davis was eating ice cream prior to appellant's fall. To the contrary, the evidence establishes that Mrs. Davis was permitted to eat in her room, often snacked between meal times, and had independent access to food. Further, Mr. Washington averred that the ice cream Mrs. Davis was eating that night was not the type of ice cream typically provided by appellee; rather, it was the type of ice cream purchased from a retail store.

{¶ 38} Appellant's argument that because appellee was aware of a known history of food and/or beverage spills on the floor, it either created or had constructive knowledge of any food and/or beverage spill, effectively imposes upon appellee an unattainable, constant duty of care. As noted above, however, a business owner is not an insurer of an invitee's safety or against all types of accidents that may occur on its premises. *Paschal*; *Johnson.*

{¶ 39} Construing the evidence most strongly in favor of appellant, we conclude that no genuine issues of material fact exist, and appellee is entitled to judgment as a matter of law. Accordingly, we overrule appellant's sole assignment of error.

## V. CONCLUSION

{¶ 40} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____