[Cite as *Estate of Merrill v. Meijer Stores Ltd. Partnership*, 2016-Ohio-1432.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| THE ESTATE OF JENNIFER MERRILL, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2015-10-090 |
| | : | O P I N I O N |
| - vs - | | 4/4/2016 |
| | : | |
| MEIJER STORES LIMITED PARTNERSHIP, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2014 CVC 1045


Gary F. Franke Co., L.P.A., Gary F. Franke, Michael D. O'Neill, 120 East Fourth Street, Suite 1040, Cincinnati, Ohio 45202, for plaintiff-appellant

Weston Hurd LLP, W. Charles Curley, Kaitlin L. Madigan, 10 West Broad Street, Suite 2400, Columbus, Ohio 43215, for defendant-appellee


**PIPER, P.J.**

{¶ 1} Plaintiff-appellant, the Estate of Jennifer Merrill, appeals a decision of the

Clermont County Court of Common Pleas, granting summary judgment in favor of defendant-

appellee, Meijer Stores Limited Partnership.[1]

{¶ 2} Merrill fractured four vertebrae in her lower back and also injured her left leg when she slipped and fell at a Meijer store. Merrill and her friend, Beverly Brewster, went to the Meijer store at approximately 7:15 a.m. in order to purchase a stroller they planned on using later that day at a tractor show. After picking out the stroller, Merrill and Brewster went to the grocery side of the store in order to purchase snacks for the day. At that time, Merrill had been in Meijer for approximately 15 minutes.

{¶ 3} Merrill, who was pushing a full-sized cart, was walking near the seafood section when she turned the corner of an aisle, took one or two steps, and then slipped. As the cart went forward, Merrill's left leg went backwards, causing her to fall. While on the floor, Merrill felt her pants because they were wet. When she placed her hand on the floor, Merrill also felt a clear watery liquid on the floor.

{¶ 4} Merrill looked around while on the floor, and observed an endcap with a wooden pallet holding cases of bottled water. Merrill later estimated that an amount of water equal to between one and two 12-ounce bottles had leaked, causing a "stream" of water, which had puddled where she slipped and fell. Merrill also stated that the stream was "coming from" under the pallet upon which the cases of water had been stacked.

{¶ 5} Two Meijer employees, who were texting on their cellular phones, passed Merrill sitting on the floor after her fall. Engaged with their respective phones, the two employees continued to text, apparently not noticing Merrill sitting on the floor. However, an employee from the seafood counter came over to assist Merrill, and a store manager later became involved.

{¶ 6} Merrill's injuries eventually required back surgery in order to fuse the broken

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar for purposes of issuing this opinion. Also, during the pendency of the case, Merrill passed away. As such, Merrill's estate was substituted as a party to this action.

vertebrae, and her medical expenses exceeded $174,000. Merrill filed suit, alleging that Meijer negligently maintained the condition of its store by permitting hazardous conditions to exist and failing to warn invitees of such conditions. After discovery occurred, during which several individuals were deposed, Meijer filed a motion for summary judgment. The trial court granted the motion, finding that Meijer was entitled to judgment as a matter of law because Merrill's claims regarding Meijer's negligence were based on mere speculation. Merrill now appeals the trial court's decision, raising the following assignment of error.

{¶ 7} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, MEIJER STORES LIMITED, PARTNERSHIP.

{¶ 8} Merrill argues in her sole assignment of error that the trial court erred in granting summary judgment to Meijer because genuine issues of material fact remain to be litigated.

{¶ 9} This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. Civ.R.56 sets forth the summary judgment standard and requires that there be no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion which is adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 10} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the

litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352, *2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

{¶ 11} In a negligence action, the plaintiff must demonstrate that the defendant owed a duty of care, breached the duty of care, and as a direct and proximate result of the breach, the plaintiff suffered injury. *Smith v. Kroger Co.*, 12th Dist. Butler No. CA2010-09-233, 2011-Ohio-1871, ¶ 11. A shopkeeper owes its business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition so that the invitees are not unreasonably or unnecessarily exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). However, the shopkeeper is not an insurer of an invitee's safety and, further, owes no duty to warn invitees of open and obvious dangers on the property. *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus.

{¶ 12} A danger that is open and obvious "is in itself, a warning." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶ 15. Where a hazard is not hidden from view or concealed and is discoverable by ordinary inspection, the court may properly sustain a summary judgment against the claimant. *Smith*, 2011-Ohio-1871 at ¶ 14.

{¶ 13} Regarding the breach of a duty owed an invitee in a slip and fall case, we have previously indicated,

> Specific to the breach element in a slip-and-fall case, in order to avoid summary judgment * * * an appellant must present evidence showing one of the following: (1) that one or more of the appellees was responsible for placing the hazard in her path; (2) that one or more of the appellees had actual notice of the hazard and failed to give appellant adequate notice of its presence or remove it promptly; or (3) that the hazard had existed for a sufficient length of time as to warrant the imposition of constructive notice, i.e., the hazard should have been found by one or more of the appellees.

*Tholen v. Wal-Mart*, 12th Dist. Butler No. CA2009-03-090, 2010-Ohio-3256, ¶ 13. As stated

by the Ohio Supreme Court, there is a breach when the "defendant or his employees had or should, in the exercise of ordinary care, have had notice of the hazard for a sufficient time to enable them in the exercise of ordinary care to remove it." *Anaple v. Standard Oil Co.*, 162 Ohio St. 537, 541 (1955).

{¶ 14} After reviewing the record, we find that genuine issues of material fact remain to be litigated. The record is undisputed that Meijer employees had sole control over the placement of the cases of water, and that the employees placed the cases of water on an endcap near where customers would be walking. The record also demonstrates that the plastic water bottles were stacked on wooden pallets that often contained nails and hard edges. In fact, Meijer employees stacked the wooden pallets on top of plastic pallets in order to keep the nails and wood from "tearing up" the store's flooring. The fact that such precautions were taken in regard to the destructive nature of the wooden pallets creates a genuine issue of material fact regarding whether similar damage occurred to the cases of water and whether such leakage of the water bottles resulted in a dangerous condition for Merrill.

{¶ 15} The deposition testimony of a former Meijer employee demonstrates that Meijer was completely aware of an ongoing problem with leaking cases of water. The former employee, who had extensive knowledge of the movement and storage of water pallets, was deposed during discovery. When asked whether Meijer had any knowledge of "water leaking from pallets of water," the former employee answered "Sure. I mean, that was an ongoing issue. You would get – as pallets are pulled on and off these trucks, you'd get a leaker in one of the pallets and it would drip. I mean, you try to find it and get it out of there." When asked to confirm that the leaking bottles were referred to by Meijer employees as "leakers," the former employee responded, "yeah. Bottles get pinched or whatever * * *." This testimony indicates that Meijer was aware that the movement of cases of water caused

leakage on an "ongoing" basis. The only action the store took to alleviate any possible danger was to try to take the leaking bottles out before the pallet was moved from storage and transported into the store for purchase.

{¶ 16} There was no indication in the deposition testimony that Meijer took any other steps once the pallets were moved into the store, such as place a receptacle or barrier to catch water that leaked, display a warning sign that water could be present on the floor, or have an employee actually check the pallet of stacked water after it had been moved into the main store area. In fact, a Meijer manager who was also deposed testified that no policy was in place to ensure that the pallet of stacked water went undamaged, and that there was nothing in place to prevent water from leaking through the pallet onto the aisle floor. Despite Meijer's knowledge there was an "ongoing issue" with water leaking from crushed or pinched bottles, Meijer took no action to ensure that any damaged plastic bottles, once transported into the front of the store, did not result in wet floors.[2]

{¶ 17} As previously stated, the trial court determined that Merrill's belief that she slipped in water coming from the pallet was solely speculation, as she had no proof that the liquid on which she slipped was water or that it came from a particular bottle within the cases of water stacked on the pallet. The trial court supported its conclusion by comparing the circumstances surrounding Merrill's fall to those that occurred in *Louderback v. Big Bear Stores Co./Big Bear Bakeries*, 4th Dist. Pike No. 96CA569, 1996 WL 571407 (Oct. 2, 1996). However, we find *Louderback* significantly distinguishable from the case at bar.

{¶ 18} In *Louderback*, a woman slipped on water in the produce section of the grocery store. The woman concluded that she slipped on water from a sprayer in the produce

---

2. Specific to whether a premise owner owes a duty to "prevent, remove, or warn against a particular hazard," the Ohio Supreme Court has determined that the question depends on factors such as "the potential hazard involved, the opportunity which such an invitee apparently would or would not have to avoid that potential hazard by the exercise of ordinary care, and the practicability of preventing, removing or warning against such hazard." *Anaple v. Standard Oil Co.*, 162 Ohio St. 537, 541-542 (1955).

section that intermittently misted fruits and vegetables. However, the produce manager testified that no water went directly onto the floor from the sprayer. Further, the produce manager testified he had checked approximately 35 minutes before the woman fell and there was no water on the floor. He also stated that there were other actual circumstances wherein water reached the floor, such as customers intervening by transferring wet produce to their carts or water bouncing off items after being picked up and replaced incorrectly by customers. The *Louderback* court concluded that there was no evidence that water was sprayed directly on the floor, and that the store was not on notice of the water on the floor from other sources. The *Louderback* court determined that the plaintiff made improper inferences based upon speculation or conjecture when claiming she fell from water sprayed onto the floor from the produce misters. We find the facts of the case sub judice distinguishable from *Louderback*, especially when required to construe the facts in a light most favorable to Merrill.

{¶ 19} The record demonstrates that Merrill slipped on a clear liquid that she described as "watery," and that Merrill saw the liquid coming from beneath the pallet containing cases of water. Brewster also testified in her deposition that the liquid upon which Merrill slipped was water and that she saw that the water had "leaked out of the pallet." While Brewster did not see the water dripping from any particular bottle of water, she testified that she personally observed water coming "out from underneath the pallet," and that one end of the water puddle was under the pallet. Significant is Meijer's knowledge that after being moved, bottles of water could be caused to leak and such was "an ongoing issue." Unlike *Louderback*, our record does not reveal any viable cause for the water being on the floor other than the cases of water stacked on the pallet recently transported and deposited at the endcap.

{¶ 20} Meijer asserts that Merrill expressly stated she was "speculating" as to what the substance was and where it came from. However, upon reviewing Merrill's deposition, she

- 7 -

simply agreed to a leading question proposed by counsel. Nothing indicates Merrill was aware of the legal implication and difference between "speculation" and a reasonable inference based upon factual observations. Prior to agreeing with counsel's phraseology, Merrill had described facts she observed firsthand that support a reasonable inference that the substance was water and that it came from the pallet containing bottles of water.

{¶ 21} Also distinguishable from the situation in *Louderback*, there remain genuine issues of material fact regarding whether Meijer had constructive knowledge because it could have or should have known that the water was on the floor at the time Merrill fell. As previously stated, Meijer employees testified that the cases of water sat on top of a wooden pallet, and that the pallet had to be placed on a plastic pallet so that its nails and hard edges would not damage the floor. Store employees were also aware that water bottles from the cases would leak because the cases were moved by forklifts that would crush and pinch the plastic bottles. The former employee testified that the employees were aware that leaking bottles referred to as "leakers" were an "ongoing issue" at the store. This testimony is therefore distinct from *Louderback* where store employees never testified that water on the floor from the misting system was an ongoing problem.

{¶ 22} Moreover, testimony from the Meijer manager and a past employee indicated that all employees were expected to locate obstacles, including spills, on the floor and remove or clean them up. The former employee testified that while no one person was tasked with keeping the floors clean, "that's part of everybody's job description, to make sure that you keep things – if you see a mess, identify it, call it in, you know, get the signs out, and get it cleaned up." The Meijer manager also testified that his "team members were also responsible for ensuring that there were no issues or situations on the floor * * *" and that the employees were told to walk the store aisles, and regularly check for hazards on the floors. The store manager also testified that sometime between 5 a.m. and 7 a.m., an employee

goes "up and down every single aisle to scan" for areas that need restocking. Despite the fact that Meijer employees understood their responsibilities to include scanning the floors for possible dangers and messes, the record does not indicate such was done on the day in question. Additionally, the record reveals at least two employees who were not scanning the floors for issues that needed attention, those being the two that walked past Merrill while texting on their phones while she was on the floor. The record indicates that the water was on the floor long enough to empty from one or two bottles and form a puddle and "stream" into the aisle without it being cleaned up by Meijer employees.

{¶ 23} We find the facts of the case sub judice more similar to *Jordan v. Simon Properties Group, L.P.*, 11th Dist. Lake No. 2004-L-060, 2005-Ohio-4480. In *Jordan*, the plaintiff slipped and fell on a puddle of water that formed on the floor from a leaking skylight. Jordan was at first unaware of what caused her fall, but then observed water leaking from the overhead skylight. Another mall patron explained that the water was coming from a leaky skylight, and the mall's operations manager later testified in his deposition that leaking skylights were an "ongoing problem" at the mall. *Id.* at ¶ 5. Although there was no evidence this particular skylight was known by the mall to be actually leaking on the day in question, the mall had knowledge of the "ongoing problem." *Id.* Even so, "no standard procedures existed for inspecting the safety of the mall premises prior to opening," and employees were merely instructed to report leaking water and wait for maintenance to clean it up. *Id.* at ¶ 6.

{¶ 24} Despite the trial court granting summary judgment because Jordan produced no evidence proving that the mall had actual or constructive notice of the puddle that caused her fall, the Eleventh District reversed the decision of the trial court, finding instead that Jordan's presentation of evidence that the mall knew of the ongoing problem of leaking skylights created a genuine issue of material fact as to whether the mall had constructive

notice.[3] The court concluded that the mall's knowledge of the potential problem should have made it aware that puddles were "likely to form underneath skylights regardless of which particular skylight was leaking at the time." *Id.* at ¶ 23. The court also noted that it was raining on the day Jordan fell, which should have made it more pressing for the mall to make sure there were no hazards around the leaking skylights.

{¶ 25} Similarly, the record in the case at bar indicates that all stocking was done overnight and into the early-morning hours because there was less customer congestion. The former Meijer employee testified that the water endcap was one of the last items to be stocked, and that such stocking occurred at the end of the night shift, usually around 7:00 a.m., but as early as 6:00 a.m. Taken in conjunction with the fact that Meijer employees knew of the ongoing problem of leaking water bottles, the stocking and moving of the water pallets onto the storeroom floor made Meijer aware that any leaking bottles of water would leak onto the floor where customers would be walking. As such, and regardless of Merrill not being able to point to the exact water bottle that leaked, we find that there are genuine issues of fact regarding whether Meijer had constructive knowledge of the water that caused Merrill's slip and fall.

{¶ 26} While there is no indication in the record that a huge amount of water was on the floor on the morning that Merrill fell, there are several facts in the record that require further litigation in regard to whether Meijer knew or should have known about the water's existence on the floor that morning.

{¶ 27} As to whether the water was open and obvious, we find that Meijer is not entitled to judgment as a matter of law on this issue. Instead, the record demonstrates that

---

3. Judge O'Neill (now Justice O'Neill) quoted *Palsgraf v. Long Island RR Co.*, 248 N.Y. 339, 344 (1928), stating "[t]he risk reasonably to be perceived defines the duty to be obeyed." He noted that the knowledge of skylights leaking in the past created a reasonable risk wherein it could be anticipated that skylights could leak in the future, thereby creating the hazard on the floor. *Jordan v. Simon Properties Group, L.P.*, 11th Dist. Lake No. 2004-L-060, 2005-Ohio-4480, ¶ 26.

the water originated from underneath the pallet and was located in such a position that customers turning the corner of an aisle, such as Merrill, may not have been able to observe the water. The record demonstrates that neither Merrill nor Brewster saw the water before Merrill fell. While Merrill estimated between 12 and 24 ounces of water was coming from beneath the pallet, Brewster testified that the amount may have been just a few ounces. Either way, both women testified that the water was not observable as they walked around the endcap. Thus, whether the water was discoverable by ordinary inspection is a genuine issue of material fact that must be determined at trial.

{¶ 28} After reviewing the record, and mindful of our obligation to construe the factual significance of evidence in favor of the nonmoving party, we find that there exist genuine issues of material fact that require further litigation. As such, the trial court erred in granting summary judgment, and Merrill's sole assignment of error is sustained.

{¶ 29} Judgment reversed, and the cause is remanded for further proceedings consistent with this opinion.

RINGLAND and HENDRICKSON, JJ., concur.