[Cite as *Guaranteed Constr. Servs., L.L.C. v. Grand Communities, Ltd.*, 2017-Ohio-9288.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Guaranteed Construction Services, LLC et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 17AP-213 |
| v. | | (C.P.C. No. 16CV-1087) |
| | : | |
| Grand Communities, Ltd. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on December 28, 2017

**On brief:** *Cooper & Elliott, LLC*, and *Barton R. Keyes*, for appellants.

**On brief:** *Kegler, Brown, Hill + Ritter*, and *Catherine A. Cunningham*, for appellees. **Argued:** *Catherine A. Cunningham*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiffs-appellants, Guaranteed Construction Services, LLC, d.b.a. Real Estate Ltd. ("Real Estate Ltd.") and Northgate Centre Development, LLC ("Northgate") (collectively "appellants"), appeal from the judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Grand Communities, Ltd. ("Grand") and Fischer Development Company (collectively "appellees"). For the following reasons, we affirm the decision of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellants Real Estate Ltd. and Northgate are affiliated entities with the same principal, Pat Shivley.  In 2014, Real Estate Ltd. held real estate purchase option contracts for multiple parcels of land in southern Delaware County, Ohio.  For purposes of reference in this decision, we will refer to the land covered by the relevant purchase option contracts as the "Price property" and the "Forman property."  Real Estate Ltd. paid $106,000 in earnest money for the option to buy the Price property, which collectively consisted of approximately 183 acres, and paid $10,000 in earnest money for the option to buy the Forman property, which consisted of approximately 28 acres.

{¶ 3}   Shivley sought a partner to develop the Price and Forman properties and ultimately agreed to work with Grand and its general partner, Fischer Development Company, on the project.  Several written agreements, summarized in pertinent part below, memorialize the parties' agreement.

### March 20, 2015 Development Agreement

{¶ 4}   Shivley, on behalf of Northgate, and Todd Huss, on behalf of Grand, agreed to work together to develop the properties for the benefit of both parties.  Regarding the Forman property, Northgate agreed to cause Real Estate Ltd. to assign the purchase option on the Forman property to appellees, and Grand agreed to reimburse appellants for the $10,000 earnest money deposit paid to the owners of the Forman property. Regarding the Price property, appellants agreed to terminate the purchase option with the owners so that Grand could purchase that property.  The agreement further provides:

> 2. Earnest Money.  Upon execution of an agreement between Grand and the [Price property] Owners for the Real Estate, Grand shall pay the [Price property] Owners [$35,000] as earnest money deposit. NorthGate shall reimburse Grand said earnest money at the time of execution of said agreement.
>
> 3. Closing.  In the event Grand elects to exercise its option and close on the [Price property], which shall occur on or before December 1, 2015, Grand shall reimburse NorthGate for the earnest money previously paid by them to the Owners in the amount of [$106,000] as well as the [$35,000] as described in Paragraph 2. Total reimbursement by Grand to NorthGate shall be [$141,000].

(Mar. 20, 2015 Agreement at 1-2.)

{¶ 5} The agreement provides that it "constitutes the entire Agreement of the parties and no oral or implied agreement or representation shall be binding on the parties" and that "[n]o agreement shall be effective to add to change, modify, waive or discharge this Agreement in whole or in part unless such Agreement is in writing and executed by all parties." (Mar. 20, 2015 Agreement at 5.) Furthermore, "Grand's performance of its obligations under this Agreement is specifically conditioned upon Grand closing on the Real Estate. In the event Grand elects not to close on the Real Estate, this Agreement shall terminate and neither party shall thereinafter be obligated to the other." (Mar. 20, 2015 Agreement at 6.)

### April 1, 2015 Purchase Option Agreement Between Grand and the Prices

{¶ 6} Grand entered into a purchase option contract with the Prices for $35,000. The agreement sets the period for exercising the option and purchasing the property at nine months past the effective date of the agreement and specifies that "but in no event shall Closing be extended past December 1, 2015, except by the mutual agreement of the parties." (Apr. 1, 2015 Purchase Option at 2.) Under the purchase option agreement between Grand and the Prices, the $35,000 paid by Grand and the $106,000 previously paid by appellants would be credited to Grand at closing. In the event Grand failed to exercise the option, the Prices would keep all option money paid, including the "already earned consideration" of $106,000 paid by appellants "for Seller keeping the Real Estate off the market and cooperating in its annexation." (Apr. 1, 2015 Purchase Option at 2.)

### April 1, 2015[1] Assignment Agreement Regarding Forman Property Option (First Assignment Agreement)

{¶ 7} Real Estate Ltd. assigned to Grand the Forman property purchase option contract. The agreement additionally provides that:

> 4. In the event that [Grand] elects not to close on the Price
> Property as required in the Price Property Agreement dated

---

[1] This agreement is referenced by several dates and names in the record. The trial court and the parties occasionally reference this agreement by using the March 26, 2015 date provided in the body of the agreement. However, the later agreements of the parties refer to this document by the date corresponding to the last signature on this document: April 1, 2015. We will use April 1, 2015 in referencing this agreement for purposes of appeal.

> April 1st, 2015, by and between [the Prices and Grand, Grand] shall assign this Agreement back to [Real Estate Ltd.].

(Apr. 1, 2015 Assignment Agreement at 1.)

{¶ 8} The document designates "this assignment of agreement" as the "Agreement" and designates the purchase option contract between Real Estate Ltd. and the owners of the Forman property as the "Original Agreement." (Apr. 1, 2015 Assignment Agreement at 1.) The April 1, 2015 assignment agreement further provides that it "constitutes the entire Agreement * * * of the parties and no oral or implied agreement or representation shall be binding" on the parties. (Apr. 1, 2015 Assignment Agreement at 2.)

### December 9, 2015 Assignment Agreement Regarding Forman Property (Second Assignment Agreement)

{¶ 9} The December 9, 2015 assignment of agreement provides that:

> [P]ursuant to Paragraph 4 of the First Assignment Agreement, attached hereto as Exhibit "B", [Grand] is contractually required to assign all of its right, title and interest in and to the [Forman option] pertaining to the sale of the Real Estate * * * to [appellants] since [Grand] has not closed on the Price Property, and [appellants are] contractually obligated to accept the assignment.

(Dec. 9, 2015 Assignment Agreement at 1.)

{¶ 10} As terms for the December 9, 2015 document, the "First Assignment Agreement" refers to the April 1, 2015 assignment agreement whereby Real Estate Ltd. assigned the Forman property to Grand, and the "Original Agreement" refers to the 2014 purchase option contract between Real Estate Ltd. and the owners of the Forman property. The April 1, 2015 assignment agreement is attached as Exhibit B. The December 9, 2015 agreement further specifies that Grand assigns back to appellants its entire interest in the Forman property, including the benefit of the original $10,000 earnest money deposit with the Formans and that Real Estate Ltd. accepts the assignment. The agreement "constitutes the entire Agreement * * * of the parties and no oral or implied agreement or representation shall be binding" on the parties. (Dec. 9, 2015 Assignment Agreement at 2.)

{¶ 11} On February 2, 2016, appellants filed suit in the Franklin County Court of Common Pleas against appellees. Appellants contended appellees were in breach of contract by not assigning the purchase option on the Price property to appellees and letting that purchase option lapse. Appellants additionally alleged claims of promissory estoppel and unjust enrichment.

{¶ 12} On March 4, 2016, appellees filed an answer asserting in part that it had no agreement with appellants to assign the Price property back to appellants and that it already assigned the Forman property back to appellants. Appellees also counterclaimed contending that appellants were in breach of contract by failing to reimburse appellees $35,000 in earnest money under the terms of the March 20, 2015 agreement and by failing to satisfy its obligations to make certain improvements and failing to maintain a certain book value.[2]

{¶ 13} On November 8, 2016, appellees moved for summary judgment on all claims. Appellees argued in part that appellants owe Grand $35,000 under the plain language of the March 20, 2015 agreement and that Grand had an obligation to assign back the Forman option, rather than the Price option, to appellants. Appellees supported its motion for summary judgment with the affidavit of Huss with associated attachments including the March 20, 2015 agreement, April 1, 2015 assignment, December 9, 2015 assignment, March 26, 2015 letters from appellants to the Prices, April 1, 2015 purchase option agreement between Grand and the Prices along with its three written extensions, and copies of cancelled checks of Grand made payable to the Prices in the amount of $15,000 and to Brenda Price in the amount of $20,000.

{¶ 14} Appellants filed a memorandum in opposition to summary judgment on December 6, 2016 contending that paragraph four of the April 1, 2015 assignment agreement required Grand to assign the Price purchase option to appellant if Grand did not close. Regarding the counterclaim, appellants contended that appellees consented to non-reimbursement of the $35,000 earnest money defendants paid to the owners of the Price property. Appellants supported the motion for summary judgment with the

---

[2] Appellees later voluntarily dismissed its counterclaim count pertaining to improvements and book value.

affidavit of Shivley along with attachments including the original Price property purchase option contracts and extensions and original Forman property purchase option contract.

{¶ 15} On January 11, 2017, the trial court granted appellees' motion for summary judgment. In doing so, the trial court found the terms of the March 20, 2015 agreement and the April 1, 2015 assignment agreement clear and unambiguous. As such, it determined the parol evidence rule precludes the trial court from varying, contradicting, or adding to the terms of the written contracts. Specifically, the trial court found that under paragraph three of the March 20, 2015 agreement, Grand was only obligated to reimburse appellants the $106,000 paid for the initial option on Grand's closing on the Price option, which never occurred. Furthermore, the trial court found, contrary to Shivley's understanding as expressed in his affidavit, nothing in the March 20, 2015 agreement or the April 1, 2015 assignment agreement required Grand to reassign its option to purchase the Price property to appellants if Grand did not close on that property. Rather, under paragraph four of the April 1, 2015 assignment agreement, Grand was obligated to assign the Forman property back to Real Estate Ltd. in the event that Grand elected not to close on the Price property. Therefore, the trial court held that appellees were entitled to summary judgment on all claims raised in the complaint.

{¶ 16} Regarding appellees' counterclaim, the trial court found by the plain terms of paragraph two of the March 20, 2015 agreement, Northgate was obligated to reimburse Grand for the $35,000 paid to the Prices at the time when the option agreement was executed. The trial court also states that it did "not find credible [appellants'] assertion that Grand relinquished its right to collect those funds via an alleged conversation with Greg Fischer that occurred at some unknown date and time." (Trial Ct. Jgmt. at 11.) As a result, the trial court held appellees additionally demonstrated entitlement to summary judgment under Count 1 of its counterclaim in the amount of $35,000 plus interest. The trial court found "no just cause for delay." (Trial Ct. Jgmt. at 11.)

{¶ 17} Appellants filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Appellants present two assignments of error:

> 1. The Trial Court erred when it granted Appellees summary judgment on Appellants' claims.

2. The Trial Court erred when it granted Appellees summary judgment on Appellees' first counterclaim.

## III. STANDARD OF REVIEW

{¶ 19} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293. The nonmoving party may not rest on the mere allegations and denials in the pleadings but, instead, must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 20} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992).

## IV. DISCUSSION

### A. First Assignment of Error

{¶ 21} Under the first assignment of error, appellants contend the trial court erred when it granted appellees' motion for summary judgment on appellants' claims. Specifically, appellants argue the trial court erred in finding the agreements to be clear

and unambiguous and, instead, contend record evidence concerning the parties' intent raised a genuine issue of material fact as to whether appellees breached the April 1, 2015 assignment agreement. Appellants also contend that the record supports their equitable claims. For the following reasons, we disagree.

{¶ 22} The interpretation of a written contract is a matter of law and an issue appropriately resolved on summary judgment. *John R. Jurgensen Co. v. Fairborn*, 1st Dist. No. C-140556, 2015-Ohio-5478, ¶ 11; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 37. The primary purpose of contract interpretation is to effectuate the intent of the parties. *Triangle Properties v. Homewood Corp.*, 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 21.

{¶ 23} "When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether or not an ambiguity exists." *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 21. Where the terms of the contract are clear and unambiguous, a court should not look beyond the plain language of the instrument to determine the rights and obligations of the parties. *Id.*; *Triangle Properties* at ¶ 21. However, where the language of the contract is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning, a court may use extrinsic evidence to ascertain the parties' intentions. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987), citing *Blosser v. Enderlin*, 113 Ohio St. 121 (1925), paragraph one of the syllabus; 4 Williston, *Contracts*, Section 610B, at 532-33 (3d Ed.1961). Extrinsic evidence may include " '(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement.' " *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, ¶ 9, quoting *United States Fid. & Guar. Co. v. Saint Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 56 (2d Dist.1998).

{¶ 24} When reviewing a contract, a court must give common words their plain and ordinary meaning "unless another meaning is clearly evident from the face or overall content of the contract, or unless the result is manifestly absurd." *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St.3d 29, 2015-Ohio-3716, ¶ 36.

" 'The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible.' " *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, ¶ 8, quoting *German Fire Ins. Co. v. Roost*, 55 Ohio St. 581 (1897), paragraph one of the syllabus. Where possible, a court must construe the agreement to give effect to every provision in the agreement. *Triangle Properties* at ¶ 21.

{¶ 25} " 'As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.' " *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. Conversely, "[c]ontract language is ambiguous if its meaning cannot be determined from the four corners of the contract or if the contract language is susceptible to two or more conflicting, yet reasonable, interpretations." *Erkis* at ¶ 22. *But see State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11 (disagreeing with the reasoning that a provision is ambiguous when multiple readings are possible and warning against resultant "self-fulfilling" allegations of ambiguity). A contract provision does not become ambiguous because it may operate to impose a hardship or advantage on a party. *Dugan & Meyers Constr. Co. v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687, ¶ 29. *Cent. Allied Ents. v. Adjutant Gen. Dept.*, 10th Dist. No. 10AP-701, 2011-Ohio-4920, ¶ 19 (discussing that "[c]ourts may not rewrite clear and unambiguous contract provisions to achieve a more equitable result" and are "powerless to save a competent person from the effects of his own voluntary agreement").

{¶ 26} Here, appellants contend paragraph four of the April 1, 2015 assignment agreement is ambiguous. Paragraph four states:

> In the event that [Grand] elects not to close on the Price Property as required in the Price Property Agreement dated April 1st, 2015, by and between [the Prices and Grand, Grand] shall assign this Agreement back to [Real Estate Ltd.].

(Apr. 1, 2015 Assignment Agreement at 1.) According to appellants, this paragraph means that if Grand chose not to close on the Price property, Grand was obligated to assign the Price option back to Real Estate Ltd.

{¶ 27} We disagree.　Paragraph four is set within the April 1, 2015 assignment agreement, which is designated by the parties as "the 'Agreement.' "　(Apr. 1, 2015 Assignment Agreement at 1.)　The purpose of the April 1, 2015 assignment agreement is to effectuate the assignment of the Forman property from Real Estate Ltd. to Grand.　Viewed in context, we find the plain language of paragraph four requires Grand to assign the Forman property back to Real Estate Ltd. in the event that Grand elected not to close on the Price property.

{¶ 28}　Even if we were to agree that paragraph four is ambiguous, thereby allowing us to look outside the four corners of the April 1, 2015 assignment agreement document, the result is the same.　As record evidence creating a genuine issue of material fact for trial, appellants point to alleged discussions between the parties, the lack of reimbursement of the $106,000 earnest money deposit on the Price property, and the undesirable business result for appellants under the interpretation taken by the trial court.　However, the parties expressly state their intent in drafting paragraph four in a later contract.　Specifically, in the December 9, 2015 assignment agreement, both parties agreed that paragraph four of the April 1, 2015 assignment agreement means that "[Grand] is contractually required to assign all of its right, title and interest in and to the [Forman option] to [appellants] since [Grand] has not closed on the Price Property, and [appellants are] contractually obligated to accept the assignment."　(Dec. 9, 2015 Assignment Agreement at 1.)　It is undisputed that, consistent with this meaning, Grand did assign the Forman option back to Real Estate Ltd.

{¶ 29} Lastly, appellants assert the record supports their equitable claims for unjust enrichment and promissory estoppel.　As a preliminary note, on appeal, appellants have not argued in support of promissory estoppel beyond stating that genuine issues of material fact exist on that claim.　As such, appellants have not met their burden of demonstrating error on appeal on that issue.　"The burden of affirmatively demonstrating error on appeal rests with the [appellant]." *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; App.R. 9 and 16(A)(7) ("[t]he appellant shall include in its brief, under the headings and in the order indicated, all the following: * * * [a]n argument containing the contentions of the appellant with respect to each assignment of

error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.").

{¶ 30} Regarding unjust enrichment, appellants claim Grand was unjustly enriched because appellants conferred a benefit (a purchase option on the Price property with the $106,000 earnest money deposit) with the understanding that if Grand did not close on the Price property it would assign the purchase option back to Real Estate Ltd. so Real Estate Ltd. could protect its $106,000 investment.

{¶ 31} "In order to recover under a theory of unjust enrichment or quasi-contract, a plaintiff must prove by a preponderance of the evidence that (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment." (Internal citation omitted.) *Anchor Realty Constr., Inc. v. New Albany Links Golf Course Co.*, 10th Dist. No. 09AP-840, 2010-Ohio-6347, ¶ 15. As a general rule, a claim for unjust enrichment is barred where an agreement exists between the plaintiff and the party against whom unjust enrichment is asserted covering the same subject matter. *Id.* at ¶ 20-21.

{¶ 32} Here, as a preliminary matter, appellants do not cite legal authority in support of their unjust enrichment claim. *Miller* at ¶ 2; App.R. 9 and 16(A)(7). Furthermore, appellants' argument is premised on their own expectation and understanding of the agreements evidenced by Grand's alleged oral promises. However, we have already found the agreements between the parties, which cover this subject matter, to be clear and unambiguous, and, as a result, appellants' claim of unjust enrichment is barred. Therefore, we find appellants' contentions regarding both equitable claims lack merit.

{¶ 33} Considering all the above, we find no genuine issue of material fact remains to be litigated, appellees are entitled to judgment as a matter of law, and viewing the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion, that conclusion being adverse to appellants. Civ.R. 56; *Harless*. Therefore, appellees are entitled to summary judgment on appellants' claims.

{¶ 34} Accordingly, appellants' first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 35} Under the second assignment of error, appellants contend the trial court erred when it granted summary judgment to appellees on their counterclaim. For the following reasons, we disagree.

{¶ 36} First, appellants contend that, as its "sole reason" for this portion of its decision, the trial court stated that it did not find affidavit evidence from appellees credible. (Appellants' Brief at 21.) As such, appellants contend that the trial court improperly used a credibility determination on summary judgment to find there was no genuine issue of material fact.

{¶ 37} Appellants' argument references a portion of the trial court opinion in which it states it did "not find credible [appellants'] assertion that Grand relinquished its right to collect those funds via an alleged conversation with Greg Fischer that occurred at some unknown date and time." (Trial Ct. Jgmt. at 11.) We agree with appellants that credibility determinations should not serve as the basis from which to grant summary judgment. *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993). However, it is unclear whether the trial court's statement references the credibility of a fact witness or the general credibility of a legal argument asserted by appellants. Regardless, the trial court's decision was not "solely" based on a credibility determination. Rather, the crux of the trial court's decision on the counterclaim is that appellants are entitled to $35,000 reimbursement from appellees based on the clear and unambiguous language of the March 20, 2015 agreement and paragraphs two and three of that agreement in particular. Those paragraphs read:

> 2. Earnest Money. Upon execution of an agreement between Grand and the [Price property] Owners for the Real Estate, Grand shall pay the [Price property] Owners [$35,000] as an earnest money deposit. NorthGate shall reimburse Grand said earnest money *at the time of execution of said agreement.*
>
> 3. Closing. *In the event Grand elects to exercise its option and close on the [Price property]*, which shall occur on or before December 1, 2015, Grand shall reimburse NorthGate for the earnest money previously paid by them to the Owners in the amount of [$106,000] as well as the [$35,000] as described in Paragraph 2. Total reimbursement by Grand to NorthGate shall be [$141,000].

(Emphasis added.)  (Mar. 20, 2015 Agreement at 1-2.)

{¶ 38} Paragraph eight, section H of the March 20, 2015 agreement further adds that only Grand's performance of its obligation is specifically conditioned on Grand closing on the Price property, and the parties' obligations to each other under the contract would only cease after Grand elected not to close on the Price property and the agreement thereby terminated.  On independent review of the March 20, 2015 agreement, we agree paragraphs two and three of the March 20, 2015 agreement clearly obligate Northgate to reimburse Grand the $35,000 earnest money paid to the Prices in executing an agreement for the purchase option contract on the Price property.

{¶ 39} Appellants next contend that appellees waived or modified that contract term.  Appellants argue that Greg Fischer, a principal of both Grand and Fischer Development Company, stated Grand would remain responsible for the $35,000 deposit "as they were completing negotiations with the owners," and appellees never demanded reimbursement of that money until filing the counterclaim.  (Appellants' Brief at 21.)

{¶ 40} We disagree with appellants' argument for several reasons.  Appellants agreed in the March 20, 2015 contract that "no oral or implied agreement or representation shall be binding on the parties" and that "[n]o agreement shall be effective to add to change, modify, waive or discharge this Agreement in whole or in part unless such Agreement is in writing and executed by all parties."  (Mar. 20, 2015 Agreement at 5.)  Furthermore, for sake of argument, even if oral modification of the contract was permissible, viewing the evidence in appellants' favor, record evidence only supports that Greg Fischer said he would be responsible for the $35,000 for the period of time he was negotiating with the owners, and nothing in the record suggests that the parties were required to demand reimbursement or payment to avoid waiving their right to that reimbursement.

{¶ 41} Considering all the above, we find that no genuine issue of material fact remains to be litigated, appellees are entitled to judgment as a matter of law, and viewing the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion, that conclusion being adverse to appellants.  Civ.R. 56; *Harless*.  Therefore, appellees are entitled to summary judgment on their counterclaim.

{¶ 42} Accordingly, appellants' second assignment of error is overruled.

## V.  CONCLUSION

{¶ 43} Having overruled appellants' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____