[Cite as *Hlad v. Step Lively Foot & Ankle Ctrs., Inc.*, 2022-Ohio-3060.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lee Hlad, D.P.M. et al., | : | |
| Plaintiffs-Appellants, | : | No. 21AP-479 |
| | | (C.P.C. No. 20CV-2466) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Step Lively Foot and Ankle Centers, Inc., | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N
Rendered on September 1, 2022

**On brief:** *Brennan, Manna & Diamond, LLC, John N. Childs, Amanda L. Waesch,* and *Hilary F. Desaussure*, for appellants. **Argued:** *John N. Childs.*

**On brief:** *Dinsmore & Shohl LLP, William M. Mattes,* and *Joshua M. Cartee,* for appellee. **Argued:** *Joshua M. Cartee.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiffs-appellants, Lee Hlad, D.P.M. ("Hlad") and Danielle McKenna, D.P.M. ("McKenna"), appeals a judgment of the Franklin County Court of Common Pleas finding in favor of defendant-appellee, Step Lively Foot and Ankle Centers, Inc. ("Step Lively"). For the reasons below, the judgment of the Franklin County Court of Common Pleas is affirmed.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant, Hlad, is a doctor practicing podiatric medicine and surgery. Hlad joined Step Lively full-time in August 2015 as a buy in partner and signed an employment agreement, and a stock purchase agreement ("2015 SPA"). Hlad wanted to become a partner and shareholder in the medical practice, and he was required to purchase stock

pursuant to the 2015 SPA. In October 2017, Hlad informed Step Lively that he no longer wanted to be a shareholder and ceased his buy in efforts before he completed full payment under the SPA. On December 31, 2018, Hlad signed a new stock purchase agreement ("2018 SPA"), whereby Step Lively re-purchased the shares Hlad had already paid for. Hlad continued employment with Step Lively as an associate under the same employment agreement.

{¶ 3} Appellant, McKenna, is a doctor practicing podiatric medicine and surgery. McKenna joined Step Lively full-time in July 2014 as an associate doctor, and she has never veered from that track. McKenna signed an employment agreement on July 16, 2014.

{¶ 4} Appellee, Step Lively, is a healthcare professional practice established in 1989 with an emphasis on podiatric medicine. Step Lively has four doctors who are shareholders and owners.

{¶ 5} On May 17, 2019, Hlad and McKenna resigned from Step Lively.

## II. ASSIGNMENT OF ERROR

{¶ 6} Appellant assigns the following as trial court error:

> The trial court erred by granting summary judgment in favor of Defendant-Appellee against the evidence and against the clear and unambiguous language contained in Plaintiffs-Appellants' respective employment contracts.

## III. STANDARD OF REVIEW

{¶ 7} "Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the non-moving party. Civ.R. 56(C)." *Harman v. Am. Alliance for Creditor Attys.*, 10th Dist. No. 09AP-133, 2009-Ohio-4839, ¶ 11. Appeal courts review cases involving a grant of summary judgment using a de novo standard of review. *Id.*

## IV. LEGAL ANALYSIS

{¶ 8} Appellants assert in their sole assignment of error that the trial court erred in finding that they were not due income continuation and not entitled to collect unpaid wages. I disagree.

{¶ 9}  "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty." *Phu Ta v. Chaudhry*, 10th Dist. No. 15AP-867, 2016-Ohio-4944, ¶ 10.  "To successfully prosecute a breach of contract claim, a plaintiff must present evidence of (1) the existence of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract, and (4) plaintiff's loss or damage as a result of defendant's breach." *Id.*, citing *Barlay v. Yoga's Drive-Thru*, 10th Dist. No. 03AP-545, 2003-Ohio-7164, ¶ 6.

{¶ 10}  Interpretation of a written contract is a matter of law.  *Guaranteed Constr. Servs. v. Grand Communities, Ltd.*, 10th Dist. No. 17AP-213, 2017-Ohio-9288, ¶ 22.  "In construing the terms of any contract, the principal objective is to determine the intention of the parties."  *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999).  "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."  *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987).  When determining the parties' intent in the language of the contract, a reviewing court must read the contract as a whole and give effect, when possible, to every provision in the agreement.  *Clark v. Humes,* 10th Dist. No. 06AP-1202, 2008-Ohio-640, ¶ 12.

{¶ 11}  When the terms in an existing contract are clear and unambiguous, we cannot create a new contract "by finding an intent not expressed in the clear language employed by the parties."  *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 246 (1978).  A contract is ambiguous where it cannot be given a "definite legal meaning."  *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11.  "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed.  Otherwise, allegations of ambiguity become self-fulfilling."  *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11.  "If the meaning is apparent, the terms of the agreement are to be applied, not interpreted."  *Albert v. Shiells*, 10th Dist. No. 02AP-354, 2002-Ohio-7021, ¶ 20, citing *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192 (1965).

{¶ 12} Hlad first started working at Step Lively in 2012 as a part-time associate doctor.  A few years later, Hlad expressed a desire to become a shareholder, and signed a new employment agreement in 2015.  The original owners invested in the medical practice when they formed Step Lively in 1989, and to become an owner now, a doctor must invest.  Hlad's price to become a Class A shareholder was $290,000.  Hlad signed the 2015 SPA,

which outlined Hlad's obligation to purchase 42.8571 shares of stock to become a shareholder. Under the terms of the 2015 SPA, Hlad would be considered a "buy in partner" or Class B shareholder until the price is paid in full, at which time he will become a Class A shareholder.

{¶ 13} Section 11 of Hlad's employment agreement addresses income continuation, which is compensation paid over a 12-month period after a doctor's termination. Income continuation is an account receivable and is only available to shareholders. The provision provides in part:

> Upon termination of employment of Employee for any reason, Employee shall be entitled to a continuation of his income in an amount equal to all net receipts which are attributable to services rendered by such Employee and collected over the twelve (12) month period following the effective date of the termination of Employee's employment ("Income Continuation Period"), less the Corporation's expenses related to the collection of such receipts, which in any event will not be less than seven percent (7%), and any other amounts owed by such Employee to the Corporation pursuant to this Agreement or otherwise. **In the event Employee has not completed payment of the Purchase Price of Employee's stock in the Corporation pursuant to the Stock Purchase Agreement, Employee is not entitled to payment of any income continuation.**

(Emphasis added.) (June 4, 2021 Employment Agreement, Ex. A-2, at 6.)

Hlad's employment agreement also identifies beneficiaries for income continuation payments, and directs "that payment of the monies due me pursuant to the income continuation policies of Section 11 of the Employment Agreement effective date on the date I become a Class A Shareholder between myself and STEP LIVELY FOOT AND ANKLE CENTERS, INC." be paid to a designated beneficiary. *Id*. at 9. It is clear that Hlad is not entitled to income continuation payments unless he has completed full payment of the stock pursuant to the 2015 SPA and becomes a Class A shareholder.

{¶ 14} Hlad continued working and making payments pursuant to the 2015 SPA. On October 1, 2017, Hlad sent a memo to the shareholders of Step Lively, requesting the suspension of his buy in process. Hlad decided to get off the partnership track and continue employment as an associate and the 2018 SPA was crafted to allow him to sell the stock purchased through the 2015 SPA back to appellee. The 2018 SPA replaced the 2015 SPA,

and by agreement of Hlad and Step Lively, terminates Hlad's agreement to purchase stock and become a partner. Hlad did not execute a new employment agreement and the agreement signed in 2015 continued in effect after Hlad's voluntarily transition to an associate doctor. Neither SPA contains any reference to an employment agreement.

{¶ 15} Hlad voluntarily left Step Lively as an associate on May 17, 2019 and demanded income continuation. Hlad believed that the 2018 SPA eliminated the stock purchase requirement in section 11 of his employment agreement, and that there were no obstacles to receiving income continuation.

{¶ 16} The contract requires Hlad to complete purchase of stock to receive income continuation. The heart of the dispute is the parties' differing opinions as to the meaning of certain contractual provisions relating to the 2018 SPA. Hlad argues that the 2018 SPA modifies the employment agreement and eliminates the requirement that a buy in partner must first complete the purchase of stock before becoming eligible for income continuation. Hlad points to language in the 2018 SPA that supports his assertion:

> Entire Agreement. This Agreement (including the documents referred to herein) constitute the entire agreement among the parties with respect to the Stock and supersede any prior understandings or agreements by or among the parties, written or oral, to the extent they are related in any way to the subject matter hereof. The parties agree and acknowledge that this Agreement supersedes the 2015 Stock Purchase Agreement.

(June 4, 2021 Stock Purchase Agreement, Ex. A-3, at 2.)

Specifically, Hlad asserts that because the 2018 SPA supersedes any agreements regarding to the purchase of stock, the language requiring the full purchase of stock prior to receiving income continuation is removed, and Hlad should receive income continuation compensation.

{¶ 17} At no time was Hlad eligible to receive income continuation. Hlad was not eligible when he signed the 2015 SPA, and did not suddenly become eligible after voluntarily halting the partnership process.

{¶ 18} "The primary goal in contract construction is to give effect to the intention of the parties, and that intent is presumed to reside in the contractual language." *Maghie & Savage, Inc. v. P.J. Dick, Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164 ¶ 42. There is no dispute regarding the intentions of the parties In his affidavit, Hlad avers "it was my

understanding and agreement with defendant that I would not receive income continuation under section 11 of the 2015 Employment Agreement should I not complete payment of the stock under the 2015 Stock Purchase Agreement." (June 4, 2021 Aff. of Dr. Hlad, Ex. A, at 1.) When he did not complete payment, there can be no basis upon which Hlad can claim entitlement to continuing income.

{¶ 19} A party moving for summary judgment has the initial burden of identifying the basis for its motion to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

{¶ 20} Hlad offers nothing to demonstrate that the intent of the parties was to strike the last sentence in section 11 of the employment agreement and allow an associate to receive income continuation. He offers no proof that any associate ever received income continuation. Hlad offers absolutely no evidence to dispute the evidentiary materials offered by Step Lively in support of its motion for partial summary judgment. Rather, he makes a sweeping general statement that because the 2018 SPA disposes of any and all issues regarding Hlad's purchase of stock, it also eliminates the requirement to complete the stock purchase before a doctor is eligible for income continuation. Hlad's position conflicts with "one of the cardinal principles of contract construction [which] is to give reasonable effect to every provision in the agreement." *Dick v. Columbus Athenaeum, Ltd.,* 10th Dist. No. 00AP-121, 2000 Ohio App. LEXIS 5647, (Dec. 5, 2000).

{¶ 21} Step Lively points first at the clear and unambiguous terms of the documents. "It is of course well-settled that the fact that parties may adopt conflicting interpretations of a contract between them, while involved in litigation, will not create ambiguity or a basis for unreasonable interpretation of the language and original intent of the parties where no such ambiguity should reasonably be found." *Ohio Water Dev. Auth. v. Western Reserve Water Dist.*, 149 Ohio App.3d 155, 2002-Ohio-4393, ¶ 25 (10th Dist.).

**{¶ 22}** "Courts cannot rewrite clear and unambiguous contracts to contain additional or different terms or make a better contract than the parties made for themselves merely because its operation happens to work a hardship on one of the parties." *F & L Ctr. Co. v. H. Goodman, Inc.*, 8th Dist. No. 83503, 2004-Ohio-5856, ¶ 9. The 2018 SPA expressly stated that it supersedes the 2015 SPA. Had the drafters intended that the 2018 SPA to modify any other requirements, especially a modification that works a substantial change to associate compensation, it would have expressly said so. This court rejects such an extension of the 2018 SPA to eliminate the prerequisite to receiving income continuation.

**{¶ 23}** The 2018 SPA could not fundamentally change the requirements to become a partner. The clause as written mandates that only doctors who have paid the stock purchase price in full receive income continuation. Hlad asks this court to establish a novel way to receive income continuation without investing in a partnership. The trial court properly held that the phrase "subject matter hereof" relates to the stock purchase agreement and not the employment agreement. The 2018 SPA was constructed to serve as a vehicle to allow Hlad to back out of his agreement to purchase shares of stock and become a shareholder, and relates to the 2015 SPA, and not to terms of employment.

**{¶ 24}** The last sentence of paragraph 5 of the 2018 SPA reads "The parties agree and acknowledge that this Agreement supersedes the 2015 Stock Purchase Agreement." Hlad points out that the trial court's interpretation "would render the last sentence of Paragraph 5 completely redundant and superfluous." (Appellant's Brief at 24.) However, paragraph 5, which is captioned "Entire Agreement," is clear, unambiguous, and a definite expression of the parties' intent. *Id*. at 21. "When interpreting a contract, we will presume that words are used for a specific purpose, and will avoid interpretations that render portions meaningless or unnecessary." *Capital City Community Urban Redevelopment Corp. v. City of Columbus*, 10th Dist. No. 08AP-769, 2009-Ohio-6835, ¶ 30.

**{¶ 25}** Hlad argues that any contractual obligation contingent upon the 2015 SPA is superseded by the 2018 SPA. Hlad's employment agreement states that he is not entitled to income continuation until he makes full payment of his stock purchase. If he does not complete full payment, Hlad will not achieve shareholder status and is not eligible for income continuation. There is nothing unclear or ambiguous about income continuation.

{¶ 26} In the alternative, if the contract is not clear and unambiguous, parole evidence is properly permitted. "Whether a contract is ambiguous is a question of law. The meaning of the words in an ambiguous contract becomes a question of fact. Extrinsic evidence is admissible to ascertain the parties' intentions, and the trial court's determination will not be overturned absent an abuse of discretion." *Campbell v. 1 Spring, LLC,* 10th Dist. No. 19AP-368, 2020-Ohio-3190, ¶ 9. "If the court cannot decipher the plain language of the contract, then the fact-finder can consider extrinsic evidence to resolve the ambiguity and ascertain the parties' intent." *Kenny v. Chesapeake Appalachia, L.L.C.*, 7th Dist. No. 14 CO 24, 2015-Ohio-1278, ¶ 15. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Min You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 19AP-733, 2020-Ohio-4661, ¶ 16.

{¶ 27} The affidavit testimony of the shareholders clearly establishes that only shareholders – doctors who have completed the purchase of required stock – are entitled to receive income continuation and to participate in the accounts receivable. (*See* Aff. of Dr. Pearlman at 1; Aff. of Dr. C. Weiner at 1; Aff. of Dr. R. Weiner at 1; and Aff. of Dr. Holmes at 1.) Associate doctors have never been eligible to receive income continuation payments. *Id.*

{¶ 28} The 2018 SPA declares that Hlad wants to "transition from a shareholder-employee of the Corporation to a non-shareholder employee." (June 25, 2021, Stock Purchase Agreement, Ex. A-5, at 1.) The 2018 SPA simply rendered section 11 of the employment agreement moot as Hlad was no longer on the partnership track.

{¶ 29} Upon review, I find that the language contained in the 2018 SPA does not support Hlad's contention that his right to income continuation was enabled by striking the last sentence in section 11 of the employment agreement. As an associate, Hlad was not eligible for income continuation, and the trial court did not err in its judgment.

{¶ 30} Appellants next challenge the trial court's decision that they were not entitled to recover unpaid wages.

{¶ 31} McKenna was always employed as an associate, and first signed an employment agreement in 2012. On July 16, 2014, McKenna signed an amendment to her

employment agreement which paid her a base salary of $50,000 for six months. The amendment specifically stated that the existing compensation clause was deleted and replaced with new language which provides:

> At the end of the six (6) month period following the Commencement Date, the Corporation shall review Employee's gross collections from services provided by her after the Commencement Date which were received by the Corporation during that six (6) month period * * * are less than Two Hundred Thousand Dollars ($200,000.00), then Employee's compensation for the subsequent quarter will be twenty-five percent (25%) of the Employee's Collections over the prior quarter. If the Employee's Collections for that six (6) month period are equal to or greater that Two Hundred Thousand Dollars ($200,000.00), then: 1) Employee shall receive a bonus payment of thirty (30) percent of the amount of Employee's Collections that exceed Two Hundred Thousand Dollars ($200,000.00); and 2) Employee's compensation for the subsequent quarter will be thirty percent (30%) of the Employee's Collections over the prior quarter. At the end of the ninth (9th) month of this Amendment, the Corporation will adjust the Employee's compensation by continuing to pay her that same percentage of the Employee's Collections over the third (3rd) quarter.
>
> Employee shall have no interest in the collection of fees for unbilled visits or in the accounts receivable of the Corporation.

(June 4, 2021 Am. to Employment Agreement, Ex. A-1, at 1-2.)

McKenna asserts that, as of May 19, 2019, she is entitled to receive a bonus and 30 percent of her collections from the preceding calendar quarter.

{¶ 32} McKenna's position is that she should be paid 30 percent of her gross collections. The employment agreement does not support that argument. The contract does not state that McKenna is paid a certain percentage of her collections, but rather Step Lively "shall review Employee's gross collections" and then establish compensation based on the amount of the collections. *Id.* at 1. McKenna's compensation is based on her estimated productivity derived from her historical performance. The fact that Step Lively reviews collections from the prior quarter as opposed to simply paying McKenna a straight percentage supports Step Lively 's contentions that McKenna is not entitled to a certain percentage of her collections.

{¶ 33} If the contract clause is somehow determined to be ambiguous, Step Lively has offered extrinsic evidence establishing that Step Lively has never paid employees a straight percentage of their billings. Step Lively argues that the doctors' salaries have been computed the same way since Step Lively was formed. (July 2, 2021, Ex. D, Tr. at 70, 81-83.) The salary is set based on a review of the doctor's productivity in the previous quarter, and the doctors are paid on an estimate of productivity in the next quarter. After that quarter is completed, the doctor's salary is reviewed and adjusted based on the next quarter's projection. The salary is not paid on actual percentage of a doctor's billing.

{¶ 34} Appellants allege that Step Lively paid employees on a 90-day lag, and that they are owed for the 90-day period ending at their termination date. Appellants argue that a genuine issue of material fact exists which should preclude summary judgment. Step Lively deny paying doctors on a 90-day lag period and state unequivocally that Hlad and McKenna have received all compensation due.

{¶ 35} Hlad and McKenna were working at Step Lively during the second quarter of 2019 when they quit, and they were receiving compensation calculated by Step Lively and based on historical data from a prior quarter. When they left the practice, they were paid for all time worked. Had appellants stayed with Step Lively until the next quarter, Step Lively would again review their collections, and then set compensation based on the collections. Because they did not continue their employment, there was no entitlement to collections from March 2019 to May 2019. There is no 90-day lag treatment here.

{¶ 36} The contract is also clear in that associates "shall have no interest in the collection of fees for unbilled visits or in the accounts receivable of the Corporation." (Am. to Employment Agreement, Ex. A-1, at 2.) McKenna was paid everything she was owed, and she has no interest in any percentage of her collections for the second quarter of 2019.

{¶ 37} The 2018 SPA did not affect the existing employment agreement. It did not refer to the employment agreement. Hlad was obviously purchasing the stock so that he could become a partner, and the 2015 SPA was put in place to effectuate that.

{¶ 38} In my view, Hlad's employment agreement is not ambiguous. By its plain language, Hlad is entitled to income continuation only if he completes his stock buy in and becomes a Class A partner. It is clear he did not achieve shareholder status and the trial court correctly determined that he is not eligible for income continuation.

{¶ 39} Likewise, appellants failed to meet its burden to establish that Hlad and McKenna are entitled to any unpaid wages. Appellants have been paid all they were due, and did not show any entitlement to receive accounts receivable.

## V. CONCLUSION

{¶ 40} Having overruled appellants' sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, J., concurring in judgment only.
NELSON, J., concurring in judgment only.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____